IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| PROKINYER P.,[1] | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 5:20-CV-245-H-BQ |
| | § | |
| KILOLO KIJAKAZI, | § | |
| Acting Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pro se Plaintiff Prokinyer P. seeks judicial review under 42 U.S.C. § 405(g) of the Social Security Commissioner's decision denying her applications for supplemental security income and disability insurance benefits. Under *Special Order 3-251*, the United States District Judge referred this case to the undersigned United States Magistrate Judge for further proceedings. The parties did not unanimously consent to proceed before a magistrate judge. The undersigned has considered the parties' briefing and arguments, the administrative record, and applicable law, and in accordance with the order of referral, makes the following findings, conclusions, and recommendations to the United States District Judge. Specifically, the undersigned recommends that the district judge affirm the Commissioner's decision.

**I.       Statement of the Case**

On January 25, 2018, Plaintiff filed an application for disability insurance benefits and an application for supplemental security income benefits, both of which alleged a disability onset date of December 4, 2017. Tr. 14. The Social Security Administration (SSA) denied her applications

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies Plaintiff only by first name and last initial.

on May 3, 2018, and again upon reconsideration on November 13, 2018. *Id.* Plaintiff appeared and testified before an administrative law judge (ALJ) on September 18, 2019. Tr. 42–72. Plaintiff did not have counsel at the hearing; however, the ALJ informed Plaintiff of her right to counsel, and she waived that right. Tr. 42. A vocational expert (VE) and Plaintiff's mother also testified. *Id.*

The ALJ determined on January 23, 2020, that Plaintiff was not disabled because she is capable of performing past relevant work. Tr. 21–22. The Appeals Council denied Plaintiff's request for review. Tr. 1. As a result of this denial, the ALJ's decision became the Commissioner's final decision and is therefore properly before the Court for review. *Sims v. Apfel*, 530 U.S. 103, 107 (2000); *see also Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005) (holding that the Commissioner's final decision necessarily incorporates the Appeals Council's denial of a claimant's request for review).

## II.    Standard of Review

A court reviewing the Commissioner's denial of social security benefits is limited to determining whether: (1) the decision is supported by substantial evidence in the record; and (2) the Commissioner applied the proper legal standards. *See* 42 U.S.C. § 405(g) (2012); *see, e.g.*, *Higginbotham*, 405 F.3d at 335. "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). A reviewing court must examine the entire record, including evidence favorable to the Commissioner as well as contrary evidence. *See Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). The court "may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute [the Court's] judgment for the [Commissioner's]." *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994) (quoting *Harrell*

*v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988)).  If substantial evidence supports the Commissioner's findings, they are treated as conclusive and will be affirmed.  42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971).

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Commissioner makes a disability determination by conducting a five-step sequential evaluation to determine whether: (1) the claimant is currently working; (2) the claimant has a "severe impairment"; (3) the impairment meets or equals an impairment listed in Appendix 1 of the regulations; (4) the claimant is capable of performing past relevant work; and (5) the claimant, after taking into account age, education, previous work experience, and residual functional capacity, is capable of performing any other work.  20 C.F.R. § 404.1520(a)(4); *Audler v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007).  If the Commissioner makes a disability determination at any step in the process, the finding is conclusive and the analysis terminates.  *See Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

The claimant bears the burden of proof in the first four steps of the analysis.  *Id*.  If the claimant can satisfy that burden, the Commissioner must then demonstrate that the claimant is capable of performing other work that exists in significant numbers in the national economy.  *Id*.  After making such a showing, the burden ultimately shifts back to the claimant to rebut the Commissioner's finding.  *See Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).

### III.     Facts

Plaintiff claims she became disabled on December 4, 2017, due to myriad health issues. Tr. 14, 17–18.  Plaintiff has a high school level education, one year of college coursework, and a previous work history as a hand packager, mental retardation (MR) aide, home health attendant, and companion.  Tr. 21, 46–47.

At step one, the ALJ concluded that Plaintiff engaged in substantial gainful activity from December 2017 through December 2018, but that her earnings since January 2019 have been "less than the substantial activity guideline amounts."  Tr. 17.  The ALJ found at step two that Plaintiff has the following medically determinable impairments: "degenerative disc disease of the cervical and lumbar spine, and obesity."  *Id.*  These impairments "significantly limit the ability to perform basic work activities as required by SSR 85-28."  *Id.*  The ALJ noted that although Plaintiff alleged she is not able to bend her left ring finger or her second right toe and suffers from high blood pressure, "the record shows no medically determinable impairments involving" the fingers, toes, or hypertension.  Tr. 18.  Plaintiff also "alleged limitations in areas of memory, concentration, understanding, completing tasks and getting along with others," but the ALJ found the record contained "no medically determinable mental or physical impairment that could reasonably be expected to produce the symptoms alleged."  *Id.*  Further, though Plaintiff's mother testified that Plaintiff suffered from depression, the ALJ determined no record of mental health complaints or formal mental health treatment during the relevant period.  *Id.*

After finding medically determinable impairments, i.e., degenerative disc disease of the cervical and lumbar spine and obesity, the ALJ found at step three that Plaintiff does not have an impairment or combination of impairments that are listed in, or that equal in severity an impairment

listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *Id.*  In so finding, the ALJ considered Plaintiff's obesity and its possible "adverse impact upon co-existing impairments."  *Id.*

Before moving to step four, the ALJ assessed Plaintiff's residual functional capacity (RFC) and found that she has the ability "to perform light work in that she can lift 20 pounds occasionally, lift 10 pounds frequently, stand/walk for 6 hours in an 8-hour workday, and sit for 6 hours in an 8-hour workday."  *Id.*  The ALJ further determined that Plaintiff "can occasionally climb ramps/stairs, balance, stoop, kneel, crouch and crawl, but cannot climb ladders, ropes or scaffolds."  Tr. 18–19.  Plaintiff "needs to alternate sitting and standing at least every hour for a few minutes," and "must avoid concentrated exposure to vibrations."  Tr. 19.  The ALJ confirmed that in making this RFC determination, he considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence."  *Id.*

Relying on the testimony of a VE, the ALJ concluded at step four that Plaintiff could perform her past relevant work as a Companion (DOT 309.677-010/SVP 3/light) based on Plaintiff's RFC and vocational profile.  Tr. 21.  Accordingly, the ALJ determined that Plaintiff is not disabled.  *Id.*

Liberally construing her sparse pleadings, Plaintiff argues on appeal that the ALJ erred in two ways:  (1) the ALJ's RFC determination is not supported by substantial evidence; and (2) the ALJ's step four determination that Plaintiff can perform past relevant work is therefore also unsupported.  Compl. 1, ECF No. 1; *see* Pl.'s Br. 2–3, ECF No. 20.  Specifically, Plaintiff states she "is not in agreement with the decision made by [the ALJ] . . . looking at the medical records, MRI, etc."  Compl. 1.  Plaintiff appears to allege that regardless of any impairment finding, her reported symptoms mean she is "[un]able to stand or sit for long periods of time," and she "cannot

continue to do [her past relevant work] anymore." *Id.* The Court examines each contention in turn.

## IV. Discussion

**A. The ALJ's RFC determination is supported by substantial evidence.**

The Court liberally construes Plaintiff's pleadings to allege that the ALJ's RFC determination is not supported by her medical records and an MRI. Compl. 1. Plaintiff, however, does not cite *anything* in the record, e.g., specific medical evidence she believes the ALJ failed to consider or give proper weight, to support this assertion. *See id.* Instead, she broadly alleges that "[d]ue to [her] chronic back pain and arthritis, lower neck pain, both knees[,] legs, foot pain, numbness in fingers and elbows," Plaintiff is not "able to stand or sit for long periods of time." *Id.* Plaintiff does not otherwise specify which part of the ALJ's RFC determination she believes is unsupported by the record.

   *1. Plaintiff's extraneous documents cannot support her appeal of the ALJ's RFC determination.*

The Court notes at the outset that Plaintiff attached numerous extraneous documents to her pleadings. *See* Compl. 2–27; *see also* ECF No. 22. Some documents are duplicates of those contained in the certified administrative record; however, many were not or could not have been considered at the administrative level, given their respective dates. The ALJ evaluated evidence of disability from December 4, 2017—the date of alleged onset—through January 23, 2020—the date of the ALJ's decision. Tr. 15. Plaintiff includes, and seemingly relies on, documents created *after* January 23, 2020. *E.g.,* ECF No. 22, at 3–7 (May 2021), 10–14 (April 2021), 15–19 (September 2021); Pl.'s Br. 3 (stating Plaintiff "had a functional capacity test last year of how long [she] could walk, stand and sit," apparently referring to an evaluation made in 2020).

6

The extra-record documents Plaintiff attaches provide no basis for reversal or remand. The Court initially notes that "[a]s part of the Commissioner's answer[,] the Commissioner of Social Security shall file a certified copy of the transcript of the record *including the evidence upon which the findings and decision complained of are based*." 42 U.S.C. § 405(g) (emphasis added). A court may only consider documents in the certified transcript of record. *Id.* ("The court shall have power to enter, *upon the pleadings and transcript of the record*, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security . . . ." (emphasis added)); *see Atteberry v. Finch*, 424 F.2d 36, 39 (10th Cir. 1970) ("Court review of the Secretary's denial of Social Security disability benefits is limited to a consideration of the pleadings and the transcript filed by the Secretary as required by 42 U.S.C. § 405(g)."); *Mann v. Gardner*, 380 F.2d 182, 187 (5th Cir. 1967) (same). Here, the Commissioner filed a certified copy of the administrative record on May 26, 2021. ECF No. 15-1, at 1 (certifying "the documents annexed hereto constitute a full and accurate transcript of the entire record of proceedings relating to this case"). Other than providing documents apparently created *after* the conclusion of the hearing, Plaintiff makes no specific claim or offer of proof that the record is incomplete or deficient in any way. *See* ECF No. 15; Compl. 1; Pl.'s Br. 1–3. To merit review and possible remand based on an incomplete administrative record, a plaintiff must demonstrate that the administrative record before the court does not "permit[] meaningful judicial review." *Brady v. Apfel*, 41 F. Supp. 2d 659, 668 (E.D. Tex. 1999) (collecting cases). Plaintiff herein makes no such assertion. Accordingly, the Court will not consider the documents attached to Plaintiff's brief on the basis of an incomplete or otherwise deficient record.

Moreover, any argument by Plaintiff that the proffered documents constitute new evidence, and therefore a basis for remand, similarly fails. Sentence six of § 405(g) provides the exclusive

means by which a court may remand a social security case based on the discovery of new evidence. *Dudley v. Astrue*, 246 F. App'x 249, 251 (5th Cir. 2007) (per curiam) (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 97–98 (1991)). Under sentence six, a court does not rule on the merits, "but rather retains jurisdiction over the case and remands to allow the SSA to consider new evidence and/or reconstruct the record." *Acevedo v. Barnhart*, 474 F. Supp. 2d 1001, 1003 (E.D. Wisc. 2007). A sentence six remand is appropriate when "(1) the Commissioner requested a remand before filing his answer, or (2) there is new evidence which is material and there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *Brown v. Astrue*, 597 F. Supp. 2d 691, 697 (N.D. Tex. 2009) (quoting *Krishnan v. Barnhart*, 328 F.3d 685, 691 (D.C. Cir. 2003)).

Although the Court may remand the case under sentence six "to allow the SSA to consider new evidence and/or reconstruct the record" before making a decision on the merits, the Court concludes that remand is not necessary in this case because the evidence Plaintiff submitted is not material, and Plaintiff has not shown good cause for failing to include it at the administrative level. "For new evidence to be material, there must exist the reasonable possibility that it would have changed the outcome of the Secretary's determination." *Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir. 1994) (internal quotation marks and citation omitted). "Implicit in the materiality requirement . . . is that the new evidence relate to the time period for which benefits were denied." *Johnson v. Heckler*, 767 F.2d 180, 183 (5th Cir. 1985) (internal quotation marks and citation omitted).

Here, many of the documents Plaintiff submitted are medical evaluations performed *after* the latest date the SSA denied her claim—November 13, 2018. *See generally* ECF No. 22. Thus, none of Plaintiff's medical evaluations can possibly "relate to the time period for which benefits were denied," i.e., before November 13, 2018, and are not, therefore "new" evidence, as

contemplated by relevant case law. *Johnson*, 767 F.2d at 183 (refusing to remand for lower court review evidence showing a "subsequent deterioration of the previously non-disabling condition," including hospital records, from after the date of plaintiff's application and hearing); *cf. Nehlig v. Comm'r of Soc. Sec. Admin.*, 40 F. Supp. 2d 841, 849–50 (E.D. Tex. 1999) (finding plaintiff established good cause for failing to incorporate evidence at the administrative level where evidence did not exist at the time of the administrative hearing because physician had not yet completed the medical source statement, which was based on pre-hearing examinations of plaintiff). In addition, to the extent Plaintiff includes any documents that may relate to the relevant time period, she has not provided good cause for failing to provide the documents at the administrative level. *See Pierre v. Sullivan*, 884 F.2d 799, 803–04 (5th Cir. 1989) (per curiam) (finding plaintiff's contention that a medical test was not performed until after the administrative process "is not enough to meet the good cause requirement"). "It is . . . the settled law of our Circuit that new evidence is not the requisite good cause for . . . a remand unless a proper explanation is given of why it was not submitted earlier." *Id.* at 803 (quoting *Geyen v. Secretary*, 850 F.2d 263, 264 (5th Cir. 1998)). In sum, the Court concludes that none of the evidence Plaintiff submitted "dilutes the record to such an extent that the ALJ's decision become[s] insufficiently supported." *Thomas v. Colvin*, No. 3:12–cv–4415–P–BN, 2013 WL 6869652, at *7 (N.D. Tex. Dec. 30, 2013).

      Accordingly, the Court cannot consider the documents attached to Plaintiff's brief in determining whether the ALJ's decision is supported by substantial evidence.

### *2. The certified administrative record supports the ALJ's RFC finding.*

In response to Plaintiff's pleadings, the Commissioner argues that the ALJ's RFC assessment is supported by substantial evidence. The Commissioner stresses that "[t]he ALJ determined that the medical evidence of record, including examinations and progress notes, as well as objective test results, did not support Plaintiff's alleged functional limitations." Def.'s Br. 6, ECF No. 21 (citing Tr. 20). Specifically, the ALJ addressed the medical issues now complained of by Plaintiff—including her back pain, weakness, and difficulty walking—and the results of Plaintiff's MRI to determine Plaintiff's RFC. *Id.* at 6–7. Moreover, the Commissioner asserts the "ALJ found it significant that Plaintiff had 'relatively infrequent trips to the doctor for the allegedly disabling symptoms.'" *Id.* at 7 (citing Tr. 20). The Commissioner argues that "[a]lthough Plaintiff may not agree with the decision, the final responsibility for the determination of an individual's RFC and the ultimate question of whether an individual is 'disabled' under the [Social Security] Act are issues reserved to the Commissioner" and "entitled to considerable deference." *Id.* at 11.

The threshold question before the Court, then, is whether the ALJ's RFC determination is supported by substantial evidence in the certified administrative record. "A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000). To determine whether substantial evidence supports an ALJ's decision, courts consider four factors: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) claimant's age, education, and work history. *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991).

The first and second elements require examination of the objective medical evidence and the diagnosis and expert opinions of treating and examining physicians. *Wren*, 925 F.2d at 126.

10

As the ALJ noted, while the objective medical evidence "could reasonably be expected to cause the alleged symptoms" of Plaintiff's impairments, the evidence does not support Plaintiff's "statements concerning the intensity, persistence and limiting effects" of those symptoms. Tr. 20. Specifically, the severity of Plaintiff's back pain and functional limitation is not supported by her medical evaluations or history of medical treatment. *Id.* For example, Plaintiff complained of "radiating back pain, fatigue, weakness and difficulty with walking" at a pain clinic visit in November 2017; however, the clinic's physical examination revealed "a normal gait and full motor strength in the lower extremities, with only some limited range of motion in the spine." *Id.* (citing Tr. 279). Further, the ALJ considered the MRI results referenced in Plaintiff's Complaint, and found that neither Plaintiff's August 2018 nor February 2019 MRIs revealed "spinal stenosis." *Id.* The ALJ also considered the fact that Plaintiff reported "relatively infrequent trips to the doctor for the allegedly disabling symptoms," "offered no evidence in support of any other efforts to obtain medical treatment through State aid or similar assistance," and described daily activities "inconsistent with the severe degree of alleged limitations." Tr. 20–21. The ALJ then considered the opinions of two consulting physicians, who limited Plaintiff "to a light exertional level with postural restrictions," and found those opinions "persuasive." Tr. 21. The ALJ collectively considered the objective medical evidence to determine Plaintiff's RFC. *Id.*

      The third element requires that a court weigh the subjective evidence of the claimant's symptoms. *Wren*, 925 F.2d at 126. In addition to Plaintiff's subjective history, as reported to medical personnel above, Plaintiff also testified before the ALJ. Tr. 42–72. Concerning her back, neck, and knee pain, Plaintiff testified broadly that with "the way [she] hurt[s] and everything . . . [she] can't just do everything [she] used to do." Tr. 46. Plaintiff averred that she only drives in emergencies because sitting in the driver's seat "hurts [her] back and [her] knees." Tr. 48. Plaintiff

11

attributes her back, neck, and knee pain to arthritis, and states that in addition to taking pain medication and a muscle relaxer to address her back pain, she occasionally uses a cane. Tr. 54–55; *see* Compl. 1; Pl.'s Br. 2. Plaintiff testified that she would prefer to sit down after "30 minutes or 45 minutes" of standing, and that she sometimes has "problems walking" because her "knees are weak."[2] Tr. 56. Plaintiff is otherwise able to cook, bathe, and dress herself, but reclines for most of the day. Tr. 57–58.

Plaintiff's mother testified before the ALJ as well. Tr. 59–62. Her mother testified that Plaintiff has experienced back and knee pain for an unspecified period of time, and has had trouble sleeping as a result. *Id.* Plaintiff's mother also attested that, in her opinion, Plaintiff has experienced depression, weight loss, and a "blood pressure problem." Tr. 62. The ALJ noted that while he did review all third-party testimony, he "is not required to articulate how evidence from nonmedical sources is considered." Tr. 19–20; *see* 20 C.F.R. § 404.1520c(d) (stating that unlike evidence from medical sources, ALJs "are not required to articulate how [they] considered evidence from nonmedical sources").

The fourth and final element consists of the plaintiff's educational background, work history, and present age. *Wren*, 925 F.2d at 126. Plaintiff was born May 30, 1970, meaning she was 47 at the time of her application and 49 during her hearing. Tr. 46. Plaintiff attained one year

---

[2] Plaintiff does not specify which portions of the ALJ's RFC determination is incorrect. To the extent she challenges the ALJ's determination that she can perform light work, based in part on her ability to "stand/walk for 6 hours in an 8-hour workday, and sit for 6 hours in an 8-hour workday," her claim should be dismissed. *See* Tr. 18–19. Plaintiff did not testify that she cannot stand or sit for a cumulative six hours, nor did she provide evidence to support such a claim. Even assuming she did, the Fifth Circuit has generally found that claimants may perform a *limited* range of work within an RFC classification and nevertheless have the RFC to perform work at that exertional level. *Landfried v. Apfel*, No. 99-50949, 2000 WL 821361, at *3–4 (5th Cir. May 24, 2000) (per curiam) (affirming that plaintiff's ability to walk or stand for only two of eight work-day hours provided sufficient support for a light work RFC finding); *Nino v. Berryhill*, No. 4:17-CV-100-A, 2018 WL 889454, at *6 (N.D. Tex. Jan. 29, 2018) (citing cases for support) ("Nino's position that his inability to perform the full range of light work because he is limited to standing and walking for two hours in an eight-hour workday and, thus, should have been given an RFC limited to sedentary work has been rejected on multiple occasions."), *R. & R. adopted by* 2018 WL 895601 (N.D. Tex. Feb. 13, 2018).

of college education, and had primarily worked in caregiving roles. Tr. 47–49. In making his RFC determination, the ALJ noted that while Plaintiff testified to her inability to perform certain movements, including bending, kneeling, turning her head from side to side, and fully bathing herself, Plaintiff's personal and work history included cooking and cleaning for patients, driving a vehicle, and being "independent in personal care," each of which would require Plaintiff to perform the aforementioned movements. Tr. 21. The ALJ considered these limited abilities in making his RFC determination. *Id.*

Accordingly, the record reflects that there is more than a "mere scintilla" of evidence supporting the ALJ's RFC determination, including objective medical evidence, medical opinions and assessments, subjective evidence from Plaintiff herself, and Plaintiff's age, education, and work experience. *See Harris*, 209 F.3d at 417; *see also Taylor v. Astrue*, 706 F.3d 600, 602–03 (5th Cir. 2012) (per curiam) (rejecting claim that ALJ's decision was not supported by substantial evidence because the objective medical evidence did not indicate disability); *Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995) (per curiam) (concluding ALJ's decision was supported by substantial evidence where claimant stated "she could perform household chores like cooking, making the bed, and washing," and "ALJ concluded that several of the symptoms allegedly plaguing [claimant] were not consistent with the objective medical evidence"); *Phyllis R. v. Berryhill*, No. 3:18-CV-478-D-BT, 2019 WL 1367684, at *5 (N.D. Tex. Mar. 8, 2019) ("The ALJ's implicit finding that Plaintiff's pain is not disabling is supported by substantial evidence; namely the objective medical evidence of unremarkable physical examinations and conservative treatment."), *R. & R. adopted by* 2019 WL 1358903 (N.D. Tex. Mar. 26, 2019), *aff'd sub nom. Russo v. Saul*, 805 F. App'x 269 (5th Cir. 2020). For these reasons, the undersigned recommends

that the district judge overrule Plaintiff's first point of error and affirm the Commissioner's RFC determination.

### B. Substantial evidence supports the ALJ's finding that, based on her RFC, Plaintiff could perform past relevant work.

At step four, the ALJ considered the RFC finding and testimony from a VE to determine Plaintiff's ability to perform past work. *See* Tr. 63–70. "A vocational expert is called to testify because of his familiarity with job requirements and working conditions." *Vaughan*, 58 F.3d at 132. "The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed." *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986), *holding modified by Carey v. Apfel*, 230 F.3d 131 (5th Cir. 2000). The ALJ posed a series of hypothetical questions to the VE regarding the abilities of a person with Plaintiff's age, educational background, and work history. *Id.* The VE testified that unlike Plaintiff's other relevant work, her companion job qualified as light work, and that even an individual with an additional restriction—that she needs to alternate sitting and standing every hour—could perform the companion job. Tr. 65–66. Considering the vocational evidence and Plaintiff's RFC as a whole, the ALJ concluded Plaintiff could perform her past work as a companion. Tr. 21–22.

Plaintiff appears to argue that she cannot perform any of her past relevant work. *See* Compl. 1; Pl.'s Br. 2. Though Plaintiff argues that she has "been doing this type of work, bending stooping and lifting 150/200 pound individuals by [her]self since the age of 18 . . . and [she] cannot continue to do these things anymore," her argument is irrelevant to the ALJ's findings. Compl. 1. The ALJ did not determine that Plaintiff could perform each and every job in her work history, including those positions where she had to bend, stoop, and lift patients. Instead, his step four conclusion was limited to only Plaintiff's work as a companion: "The [VE] testified that a

hypothetical individual with the claimant's [RFC] and vocational profile could perform past work as a Companion. Accordingly, . . . the undersigned finds that the claimant was able to perform it as actually and generally performed." Tr. 22.

Plaintiff bears the initial burden of proving she cannot perform her past relevant work. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). In her hearing, Plaintiff testified that while the jobs she previously performed—such as packager, home health attendant, and MR aide—were "too much on [her] body," she also stated "that's why now with this [companion] job [she] just observe[s] and assist[s] when needed," thus acknowledging that her companion work does not require the same exertion level as previous jobs. Tr. 51. The VE testified that Plaintiff's prior jobs were medium exertion level, as opposed to light, and therefore did not recommend them for a person with Plaintiff's RFC. Tr. 65–66. Even if Plaintiff is alleging she performs her companion job at a medium-exertion level, the ALJ is only required to examine whether Plaintiff *could* perform the position as it is generally performed in the national economy, regardless of how Plaintiff *actually* performs it. *See Leggett*, 67 F.3d at 564–65 ("The mere inability of a claimant to perform certain requirements of his past job does not mean that he is unable to perform 'past relevant work' as that phrase is used in the regulations; rather, the Commissioner may also consider the description of the claimant's past work as such work is generally performed in the national economy." (internal quotation marks and citation omitted)). Taken together, substantial evidence supports the ALJ's conclusion that Plaintiff could perform her companion job as it is generally performed, even if she could not perform her past medium-level work. *See Holland v. Colvin*, No. 3:14-CV-2964-K-BH, 2015 WL 5437727, at *10–11, *14 (N.D. Tex. Aug. 31, 2015) (rejecting claim that plaintiff could not perform past relevant composite job that "included jobs performed at the medium exertion level and semi-skilled level" which would "exceed[] the

15

limitations in her RFC," where plaintiff could perform subset of past relevant work as generally performed), *R. & R. adopted by* 2015 WL 5439051 (N.D. Tex. Sept. 15, 2015), *aff'd*, 652 F. App'x 266 (5th Cir. 2016).

To the extent Plaintiff challenges the ALJ's conclusion based on her inability to perform non-companion light work, such claim is also without merit. Though the ALJ did not ultimately need to reach step five, he asked the VE hypothetical questions regarding other jobs available in the national economy that could fit the Plaintiff's restrictions. The VE testified that an individual with Plaintiff's limitations could perform light-work jobs such as cashier (DOT 211.462-010), light packager (DOT 559.687-074), and bench assembler (DOT 706.684-022). Tr. 67–68. This testimony supports a determination that an individual with Plaintiff's RFC, even with additional restrictions, could perform certain light-work jobs, including but not limited to Plaintiff's companion job. The ALJ's conclusion that Plaintiff can perform certain light-work positions even if she could not perform every light-work job available is therefore supported by substantial evidence. *Smith v. Chater*, 962 F. Supp. 980, 983 (N.D. Tex. 1997) ("Although [claimant's] limitations precluded the ALJ from assuming that he could perform the full range of light jobs, they did not prevent the ALJ from finding that significant light jobs were still available to him."). To dispute a finding that she is capable of performing jobs a vocational expert has identified, Plaintiff must bring evidence to the contrary. *Perez v. Barnhart*, 415 F.3d 457, 464 (5th Cir. 2005). Plaintiff has not done so. For these reasons, the undersigned recommends the district judge dismiss Plaintiff's second point of error and affirm the Commissioner's step four finding.

## V.   Recommendation

For the foregoing reasons, the undersigned recommends that the United States District Court affirm the Commissioner's decision and dismiss Plaintiff's Complaint with prejudice.

## VI.     Right to Object

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2016); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding, conclusion, or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: February 3, 2022.

_____
**D. GORDON BRYANT, JR.**
**UNITED STATES MAGISTRATE JUDGE**